The judgment of the United States Customs Court is *affirmed*.

## UNITED STATES *v.* MORRIS FRIEDMAN (No. 3632)[1]

United States Court of Customs and Patent Appeals, February 12, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham, Jr.* and *Ralph Folks*, special attorneys, of counsel,) for the United States.

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for appellee.

[Oral argument December 13, 1933, by Mr. Folks and Mr. Allerton deC. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding that a certain article imported at the port of Phila-

1 T. D. 46960.

delphia on December 12, 1927, described in the consular invoice as an "antique hanging carpet", and by the United States purchaser of the same as an "antique silk hanging", was entitled to free entry under the provisions of paragraph 1708 of the Tariff Act of 1922.

The article was described by the collector as a "Polonaise rug", and was classified and assessed with duty under the provisions of paragraph 1116 of said tariff act at 55 per centum ad valorem.

Appellee, who, it seems to be conceded, was a customs broker acting as agent of the purchaser of the article, protested said classification, making several claims, only one of which is relied upon by him before us, viz, that the article was free of duty under said paragraph 1708, which claim, as above indicated, was sustained by the trial court.

The paragraphs of said tariff act here involved read as follows:

PAR. 1116. Oriental, Axminster, Savonnerie, Aubusson, and other carpets and rugs, not made on a power-driven loom; carpets and rugs of oriental weave or weaves, produced on a power-driven loom; chenille Axminster carpets and rugs, whether woven as separate carpets and rugs or in rolls of any width; all the foregoing, plain or figured, 55 per centum ad valorem.

PAR. 1708. Works of art (except rugs and carpets), collections in illustration of the progress of the arts, works in bronze, marble, terra cotta, parian, pottery, or porcelain, artistic antiquities, and objects of art of ornamental character or educational value which shall have been produced more than one hundred years prior to the date of importation, but the free importation of such objects shall be subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe.

The customs regulation issued under the provisions of said paragraph 1708, and in force at the time of said importation, was Article 423, Customs Regulations of 1923, as amended by T.D. 42299. Insofar as is here pertinent, said regulation reads as follows:

ART. 423. *Artistic antiquities.*— * * *

   *       *       *       *       *       *       *

The invoice filed upon entry shall contain the name and address of the person from whom the articles were acquired, date when acquired, and, if possible, the place and approximate date of production.

An affidavit by the owner on Customs Form 3343 shall also be filed on entry.

The purchaser-owner, one Hagop Kevorkian, filed an affidavit on Form 3343 as required by the regulation.

The Government has assigned many errors, only one of which it is necessary for us to consider. This assignment is that the trial court erred in holding that said regulation hereinbefore quoted was complied with.

It appears from the testimony that the article in question was purchased by said Kevorkian, a resident of the United States, from one J. Pollak, in London, England.

The invoice filed with the entry contains the following recital:

INVOICE OF PURCHASED MERCHANDISE

(For Great Britain)

(Amended Nov. 2, 1924)

LONDON, ENGLAND, *22nd November, 1927.*

Invoice of antique hanging carpet purchased or agreed to be purchased by Mr. Morris Friedman of 648 Drexel Building, Philadelphia, from Mr. J. Pollak, of Piccadilly Hotel, London, W., as per order accepted 16th November 1927.

The invoice also contains the following:

1 antique hanging carpet, producer unknown, origin, Poland, 17th Century. Purchased by private treaty, June 1927

Nowhere in the invoice, in the owner's affidavit, or elsewhere, does it appear from whom the seller Pollak acquired the article.

The trial court held that, inasmuch as the name of the seller and his address appeared upon the invoice, and the required affidavit was filed by the owner Kevorkian, said regulation was complied with.

In this the court was in error. Our decision herein is controlled by our decision in the case of *Hinkle* v. *United States*, 19 C.C.P.A. (Customs) 125, T.D. 45257, which case is not cited in the trial court's opinion; neither is it cited by counsel in their briefs in this court.

That case involved the construction of the same regulation as is here before us. In that case there was involved the classification of certain antique tapestry purchased by a resident of the United States in France. A consular invoice was executed by the seller of the article in which the article was described, and in which the name of the person from whom the seller acquired the article was stated, but the address of such person was not stated in the invoice as required by the regulations. In our decision in that case we said:

Section 481 of the Tariff Act of 1922 provides for the form and contents of invoices of imported merchandise. Subsection (a) (2) of said section provides that each invoice shall contain—

(2) The time when, the place where, and the person by whom and the person to whom the merchandise is sold or agreed to be sold, or if to be imported otherwise than in pursuance of a purchase, the place from which shipped, the time when and the person to whom and the person by whom it is shipped;

Section 484 (b) of said act provides that no merchandise may be entered without the production of a certified invoice therefor, except in certain instances which are unimportant in the case at bar.

It will be observed that the seller and shipper of the merchandise in question here complied substantially with the requirements of said sections in making the invoice of the imported tapestry. In other words, the seller gave the "time when, the place where, and the person by whom and the person to whom the merchandise is sold." The introductory portion of the invoice gave all this information, as was required by law.

If, as argued by the importer, this was all that was required, then nothing further in this regard was required by amended customs regulations, Article 423,

than what was already a part of the statute. We are unable to come to that conclusion. Said amended regulations provide—

The invoice filed upon entry shall contain the name and address of the person from whom the articles were acquired, date when acquired, and, if possible, the place and approximate date of production.

Bearing in mind that this information is to be given by the person making the invoice, it becomes apparent that Thierard Frères [the foreign seller] were required to give "the name and address of the person from whom the articles were acquired" by them. Doubtless Thierard Frères had this in mind when it was stated in the invoice that the tapestry was purchased from Madame Lefévre. Inasmuch as her address was not given, however, the regulation was not fully complied with, and the goods are, consequently, not entitled to free admission.

In the case at bar, not only was there no address given of the person from whom the seller acquired the article, but the name of such person was not given, and the purchaser of the article, Kevorkian, testified that he asked the seller for this information but he declined to give it, giving as a reason that he (the seller) did not want to disclose the source of his purchase.

Of course, the object of the regulation is to enable the Government to make investigation of the source of articles embraced within the provisions of said paragraph 1708 in determining their proper classification, and in the case at bar it appears that the seller deliberately withheld information required by the regulation.

Appellee's counsel points out that the seller could not be compelled to disclose this information, and hence it was impossible for the purchaser to secure it. This is a misfortune of the purchaser, whose good faith we do not question, but this fact does not obviate the necessity of complying with the regulations in order to secure free entry of the article under paragraph 1708.

As we said in the case of *Hinkle* v. *United States, supra*—

* * * The free importation of artistic antiquities is, however, a privilege, to take advantage of which the laws and pertinent regulations must be strictly complied with. * * *

In view of the conclusion we have reached, it is unnecessary for us to pass upon the correctness of the ruling of the trial court that "the article is not a rug or floor covering but a hanging to be used as · tapestry is used."

For the reasons stated herein, the judgment appealed from is *reversed*.

### CONCURRING OPINION

GARRETT, Judge, specially concurring: I am compelled to agree that under the construction of the regulation by the majority opinion in *Hinkle* v. *United States*, 19 C.C.P.A. (Customs) 125, T.D. 45257, the instant case is controlled by that decision, if the latter is to be adhered to by the court. I am, however, so strongly of the opinion that the modification of said regulation described in the opinions in the *Hinkle* case, *supra,* was made, and properly made, to meet cases

where compliance with the original requirements was virtually impossible and thus avoid refusal of free entry to artistic antiquities upon purely technical grounds, as that I prefer to concur specially in order to reiterate belief in the views expressed in the dissenting opinion in that case.

Upon the merits of the instant case, I am not convinced that the presumption of correctness attaching to the collector's classification was satisfactorily overcome by the evidence presented and I prefer to rest the decision upon that ground.